ROSIE LUCIANO, Respondent, v FANBERG REALTY COMPANY et al., Defendants, and PORT AUTHORITY OF NEW YORK AND NEW JERSEY, Appellant.

First Department, May 22, 1984

**APPEARANCES OF COUNSEL**

*Arthur P. Berg* of counsel (*Sholem Friedman* and *Jay A. Selcov* with him on the brief; *Patrick J. Falvey,* attorney), for appellant.

*Mark J. Manus* of counsel (*Ronald V. Pomerance* with him on the brief; *Lipsig, Sullivan & Liapakis, P. C.,* attorneys), for respondent.

**OPINION OF THE COURT**

SULLIVAN, J.

The Port Authority appeals from an order, entered after the commencement of this action, granting plaintiff leave to serve a notice of claim, *nunc pro tunc.* Since the filing of a notice of claim upon the Port Authority is a condition precedent to suit, and the applicable statute does not provide an exception in the circumstances presented, Special Term lacked the power to waive compliance. Accordingly, we reverse and dismiss the complaint as against the Port Authority.

Plaintiff, a tenant in a building in the City of New York, brought this action against the Port Authority and six other defendants[1] for their negligence in causing the building to collapse on August 31, 1981. Plaintiff, who was not present in the building at the time, seeks both compensatory and punitive damages for the destruction of her furnishings and personal belongings.

A summons and verified complaint were served on the Port Authority on August 27, 1982 without prior service upon it of a notice of claim. On the very next day, approximately two months after the expiration of the time period mandated by section 7 of chapter 301 of the Laws of 1950 for such service, plaintiff moved for an order allowing her to file a notice of claim, *nunc pro tunc*. Special Term granted the motion, holding that enforcement of section 7 would cause plaintiff hardship and that the Port Authority had acquired actual knowledge of the facts underlying the claim as a result of receiving five other notices of claim addressed to the same incident. This appeal followed.

By concurrent legislative enactment, New York and New Jersey have consented to suits against the Port Authority (L 1950, ch 301, § 1 *et seq.;* NJ Stats Ann, § 32:1-157 *et seq.*), upon compliance with certain jurisdictional conditions precedent, including that "a notice of claim shall have been served upon the port authority by or on behalf of the plaintiff or plaintiffs at least sixty days before such suit, action or proceeding is commenced." (L 1950, ch 301, § 7.)

Prior to the enactment of this concurrent legislation, effective June 13, 1951, the Port Authority, as a direct governmental agency of New York and New Jersey, was absolutely immune from suit. In a long and unbroken line of decisions, Federal courts as well as those of New York and New Jersey held that the Port Authority shared the States' immunity from suit. These decisions are collected and cited in *Port of N. Y. Auth. v Township of Weehawken* (27 NJ Super 328, 333, revd on other grounds 14 NJ 570). In *Town of Bloomfield v New Jersey Highway Auth.* (18 NJ 237, 242) the New Jersey Supreme Court reaffirmed the

---

1. The six other defendants are not governmental agencies, and thus, a notice of claim is not required against them.

principle that "independent state and bi-state authorities", such as the Port Authority, share the States' sovereign immunity.

In *Trippe v Port of N.Y. Auth.* (14 NY2d 119, 123) the Court of Appeals specifically recognized that prior to June 13, 1951, "[T]he Port Authority as a direct agency of the State of New York was, in the absence of any consent by the State, completely immune from suits of any sort". The court held further (p 124) that "since the State may decline to consent, its consent if given may be made contingent on a suit being brought or a demand being made within a reasonable time".

Thus, as *Trippe* (*supra*) makes clear, since the Port Authority, in the absence of consent, was absolutely immune from suit, the States were free to condition consent on compliance with whatever requirements they deemed appropriate. Indeed, the statute specifically recites that "[t]he foregoing consent [to be sued] is granted" upon various conditions, including prior evidence of a notice of claim (L 1950, ch 301, § 7). Thus, if the statutory conditions are not met, consent is withheld. The same view has been expressed by the Supreme Court in the context of the Federal Government's immunity from suit: "The United States cannot be sued in their courts without their consent, and in granting such consent Congress has an absolute discretion to specify the cases and contingencies in which the liability of the Government is submitted to the courts for judicial determination. Beyond the letter of such consent, the courts may not go, no matter how beneficial they may deem or in fact might be their possession of a larger jurisdiction over the liabilities of the Government." (*Schillinger v United States,* 155 US 163, 166.) *Schillinger* (*supra*) was specifically cited in *Rao v Port of N.Y. Auth.* (122 F Supp 595, affd 222 F2d 362). There, the District Court, in refusing to enjoin the Port Authority in the face of an anti-injunction statute, held (p 597), "[s]tatutes wherein sovereign immunity against suit is waived must be strictly construed."

In arriving at its decision Special Term relied exclusively upon decisions involving section 50-e of the General Municipal Law, which specifically accords a wide range of

discretion to a court in permitting the filing of a late notice of claim. Section 50-e, however, applies exclusively to municipal corporations, and has no application to the Port Authority, a bistate agency. Based upon this misplaced reliance on section 50-e, Special Term cited the lack of prejudice and held that where actual knowledge of the facts underlying a claim has been ascertained late filing should be permitted. Neither of these factors, however, excuses noncompliance with the Port Authority's notice of claim requirement.[2]

Subdivision 5 of section 50-e of the General Municipal Law specifically empowers a court in entertaining a late notice application to consider, *inter alia,* whether the public corporation acquired actual knowledge of the underlying facts within the time specified for service of a notice of claim or a reasonable time thereafter and whether the delay in serving the notice of claim prejudiced the public corporation. In stark contrast, section 1 of chapter 938 of the Laws of 1974 does not provide any authorization to grant an application for leave to serve a late notice of claim, except in cases of death or "[w]here the claimant is a person under the age of eighteen years or is mentally or physically incapacitated and by reason of such disability no notice of claim is filed". Clearly, none of these disabilities is applicable here.

The notice of claim requirement with respect to the State or a State agency, unlike the case of a municipal corporation, is jurisdictional. (*Buckles v State of New York,* 221 NY 418.) In *Buckles* (*supra,* pp 423-424), the court, in dismissing a claim against the State of New York where a notice of intention to sue had not been served within the time prescribed held: "The state * * * is not like a municipal corporation against which an action can be maintained and over which the courts have jurisdiction irrespective of the conditions precedent * * * On the contrary, no claim can be litigated at all against the State, except by its permission. A valid cause of action may exist but the state's immunity

---

**2.** Completely distinguishable is *Zamel v Port of N. Y. Auth.* (56 NJ 1). There, the court held that the notice of claim statute had been sufficiently met by two timely attorney's letters which contained substantially all of the notice of claim requirements. (See, also, *Seaboard World Airlines v Port Auth. of N.Y.,* NYLJ, May 14, 1976, p 10, col 5.) Here, plaintiff admittedly has not complied with any of the statutory requirements.

prevents its enforcement * * * When, therefore, the legislature in granting permission to prosecute an action against the state required notice of intention to be filed, that condition must be complied with in order to subject the state to an action." Similarly, in *Matter of Welch v State of New York* (71 AD2d 494, 497), the Fourth Department affirmed an order of the Court of Claims denying a motion for leave to file a notice of claim *nunc pro tunc,* holding, "A failure to file a notice in writing of intention to file a claim divests the Court of Claims of jurisdiction to hear and determine the claim against the State". Moreover, *Welch* (*supra,* p 498) completely rejected any suggestion that the issue of prejudice is material to actions against the State: "The fact that the State may not have been prejudiced by the failure to file the notice of intention with the clerk is immaterial. 'Since all of section 10 is jurisdictional in character, particularly the timeliness of filing, the provisions must be strictly construed' ".

Finally, we note that in a recent decision (*Parochial Bus Systems v Board of Educ.,* 60 NY2d 539) the Court of Appeals has reaffirmed the principle that in the absence of specific statutory authority, courts cannot waive jurisdictional defects in the service of a notice of claim. Specifically, the court rejected a claim that a notice of claim served upon the Board of Education's Bureau of Public Transportation and subsequently delivered to the Board's Legal Department satisfied the statutory requirement that a notice of claim be presented " 'to the governing body of [the] district or school' ". That the Board of Education had actual notice of the incident and that no prejudice was alleged were found to be completely irrelevant. " 'What satisfies [the statute] is not knowledge of the wrong. What the statute exacts is notice of the "claim" ' " (*supra,* p 548, citing *Thomann v City of Rochester,* 256 NY 165, 172).

Thus, Special Term's finding that the timely notices of claim served on the Port Authority by five other claimants provided all the required statutory information is flawed since those notices fail to comply with the most basic element of the notice of claim, that is, to identify the claimant and apprise the Port Authority as to the type and extent of damages claimed "so far as then practicable." (L

1974, ch 938, § 1.) The Port Authority first learned of plaintiff's name, address, and damages when it was served with her complaint and the accompanying application for leave to serve a late notice of claim. To permit a late notice in the circumstances presented herein is to ignore the legislative mandate making a timely notice of claim a condition precedent to suit.

Accordingly, the order of the Supreme Court, New York County (Rettinger, J.), entered April 4, 1983, which granted plaintiff's motion for leave to serve a notice of claim, *nunc pro tunc,* upon defendant Port Authority, should be reversed, on the law, without costs or disbursements, the motion denied and the complaint dismissed.

KUPFERMAN, J. P., SILVERMAN, MILONAS and KASSAL, JJ., concur.

Order, Supreme Court, New York County, entered on April 4, 1983, unanimously reversed, on the law, without costs and without disbursements, the motion denied and the complaint dismissed.